# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| INFOGATION CORPORATION, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | NO. 6:20-cv-0366 |
| | § | |
| GOOGLE LLC, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT GOOGLE LLC'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND .............................................................................. 2

     A.      Google And Its Activities Relating To The Accused Features Of The
           Google Maps API Are Based In California ............................................. 2

     B.      InfoGation And Its Officers Are Based In San Diego, California ......................... 3

     C.      Relevant Third Party Witnesses Are Based In California ..................................... 3

     D.      InfoGation's Prior Lawsuits Against Google's OEMs In The SDCA .................. 4

III.    LEGAL STANDARD ......................................................................................... 5

IV.     ARGUMENT: ALL FACTORS FAVOR TRANSFER ....................................... 6

     A.      This Case Could Have Been Brought In The SDCA ............................................. 6

     B.      Private Interest Factors Weigh In Favor Of Transfer ........................................... 7

          1.      The Relevant Sources Of Proof Are Based In California .......................... 7

          2.      The Availability Of Compulsory Process Strongly Favors Transfer ........ 7

          3.      The Cost Of Attendance For Willing Witnesses ....................................... 8

          4.      Other Practical Problems Associated With Trial Of These Cases
              Favor Transfer ........................................................................................... 9

     C.      The Public Interest Factors Favor Transfer To The SDCA ................................ 11

          1.      The Administrative Difficulties Flowing From Court Congestion .......... 11

          2.      The Local Interest In Having Localized Interests Decided At Home ...... 12

          3.      The Familiarity Of The Forum With The Law ....................................... 12

          4.      The Avoidance Of Conflict Of Laws ..................................................... 12

V.      CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
    358 F.3d 337 (5th Cir. 2004) ................................................................................ 6

*Bandspeed, Inc. v. Acer, Inc.*,
    No. 2:10-CV-215-TJW, 2011 WL 3648453 (E.D. Tex. Aug. 15, 2011) ............................... 10

*Crossroads Sys., Inc. v. Infortrend Corp.*,
    No. A-12-CA-104-SS, 2012 WL 13029377 (W.D. Tex. May 15, 2012) .............................. 10

*In re EMC Corp.*,
    501 F. App'x 973 (Fed. Cir. 2013) ........................................................................ 10

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ................................................................... 7, 8, 11

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) (*Volkswagen I*) .................................................. 6, 12

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) ............................................................................... 9

*In Re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (*Volkswagen II*) ............................................... passim

*Moskowitz Family LLC v. Globus Medical, Inc.*,
    No. 6:19-CV-00672-ADA, 2020 WL 4577710 (W.D. Tex. July 2, 2020) ..................... 1, 7, 9

*Nidec Motor Corp. v. Broad Ocean Motor LLC*,
    No. 2:15-CV-443-JRG-RSP, 2016 WL 776986 (E.D. Tex. Feb. 29, 2016) .......................... 10

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514 (2017) ............................................................................................. 6

*Turner v. Cincinnati Ins. Co.*,
    No. 6:19-CV-642-ADA-JCM, 2020 WL 210809 (W.D. Tex. Jan. 14, 2020) ...................... 11

*Wet Sounds, Inc. v. Audio Formz, LLC*,
    No. A-17-CV-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017), *report
    and recommendation adopted*, No. 1:17-CV-141-LY, 2018 WL 1219248
    (W.D. Tex. Jan. 22, 2018) ...................................................................................... 12

<u>**STATUTES**</u>

28 U.S.C. § 1400(b) ........................................................................................... 6

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

## **RULES**

Fed. R. Civ. P. 45(c)(1)(A) ........................................................................................... 8

Fed. R. Civ. P. 45(c)(1)(B) ........................................................................................... 8

## I.    INTRODUCTION

Google LLC ("Google") moves to transfer this action filed by InfoGation Corp. ("InfoGation") to the Southern District of California ("SDCA") pursuant to 28 U.S.C. § 1404(a).

This case originates from California and was previously litigated in the SDCA. Both parties are based in California. Google's headquarters is in Mountain View, California, while InfoGation's is in San Diego, California in the SDCA. The allegedly infringing features of the accused product, Google Maps Application Programming Interface ("API"),[1] are managed at Google's offices in Mountain View, California. Google witnesses most knowledgeable about the accused features of Google Maps API are similarly located in Mountain View, California. Relevant third parties, including the co-inventor of the asserted U.S. Patent No. 6,292,743 ("'743 Patent") and the prosecution attorney, are also in California. No party or known pertinent third party has any relevant connection to this District. These facts parallel those in the Court's recent decision granting transfer in *Moskowitz Family LLC v. Globus Medical, Inc.*, where *both* parties were located in or near the transferee forum and no relevant witnesses were identified in this District. No. 6:19-CV-00672-ADA, 2020 WL 4577710 (W.D. Tex. July 2, 2020).

This case presents a stronger case for transfer than *Moskowitz* for the additional reason that InfoGation filed a prior iteration of this lawsuit in the SDCA. In 2016, InfoGation sued three of Google's original equipment manufacturers ("OEM") for infringement of the same '743 Patent based on Google Maps. During that action, InfoGation opposed defendants' motions to transfer to other forums, stating "InfoGation filed the complaints in InfoGation's home district [the SDCA], where InfoGation has always been located, rather than forum shopping" and arguing that the SDCA court dedicated a "great deal of time and energy learning the facts,"

---

[1] The Google Maps API is now referred to as the Google Maps Platform. Zhang Decl. ¶ 1.

making litigation in any other venue inefficient.  Ex. 2 (Case No. 3:16-cv-05821, Dkt. No. 28) at 9; Ex. 3 (Case No. 3:16-cv-01902, Dkt. No. 98) at 11.  InfoGation succeeded in keeping the lawsuits in the SDCA.  But its fortunes faded after the SDCA court issued dispositive claim constructions in defendants' favor and InfoGation then voluntarily dismissed its cases.

InfoGation's decision to leave its "home district"—which has experience with the '743 Patent, the parties, and the technology—and file in this District is the exact type of "forum shopping" that courts disfavor and that InfoGation itself disavowed in its effort to keep the prior case in the SDCA.  Transfer to the SDCA is appropriate here.

## II.    FACTUAL BACKGROUND

InfoGation filed this lawsuit in this District ("WDTX") on May 5, 2020, alleging that Google infringes the '743 Patent based on the Google Maps API product.  Dkt. 27.  InfoGation's allegations specifically accuse features relating to the creation, formatting, and usage of directions and routes information, which are controlled by a part of the Google Maps API called Directions API.  *Id*. at ¶¶ 13–21; Zhang Decl. at ¶ 2.

### A.    Google And Its Activities Relating To The Accused Features Of The Google Maps API Are Based In California

Google is based in California with its principal place of business in Mountain View, California.  Zhang Decl. at ¶ 3.  Google's Mountain View headquarters is the strategic center of Google's business, and it houses thousands of employees making up over 35% of Google's total worldwide employees.  *Id*. at ¶ 4.

The Google employees most knowledgeable about the accused features of Google Maps API relating to the creation, formatting, and use of directions and routes in Directions API are based in Mountain View, California, and Seattle, Washington.  Yaron Fidler, Product Manager for Directions API, is based in Mountain View.  *Id*. at ¶ 5.  Bochun Zhang is a Software Engineer

located in Mountain View, and manages a team of nine engineers who work on Directions API in Mountain View. *Id*. at ¶¶5-6. And Jeffrey Hightower is an Engineering Director based in Seattle who works with the engineers and project leads for the Directions API in California. *Id*. at ¶5. Nearly all the documents, such as those generated by managers, project leads, or engineers that relate to the development or operation of the accused features of the Google Maps API, including highly confidential proprietary source code, are either physically present in or electronically accessible from Mountain View as that is where the persons most qualified to identify and locate such documents reside. *Id.* at ¶ 7. No Google employees who work on the accused features of the Google Maps API are based in Texas. *Id*. at ¶ 9.

### B.    InfoGation And Its Officers Are Based In San Diego, California

InfoGation's principal place of business is located at 12250 El Camino Real, Suite 116, San Diego, California, in the SDCA. Dkt. 27 at ¶ 1. San Diego is also where Dr. Qing Kent Pu, the CEO founder of InfoGation, and co-inventor of '743 Patent, is located. *Id*. at ¶ 11; Ex. 4 (Dr. Qing Kent Pu Accurint).

### C.    Relevant Third Party Witnesses Are Based In California

Dr. Hui Henry Li is a co-inventor of the '743 Patent. Dkt. 27 at ¶ 11. Dr. Li currently resides in Los Altos, California. Ex. 5 (Dr. Hui Henry Li Accurint).

Dooyong Lee was identified by InfoGation in its prior lawsuits against Google's OEMs as an individual likely to have knowledge of attempts to monetize the '743 Patent. *See* Ex. 6 (Case No. 3:16-cv-01903, InfoGation's initial disclosures) at 1. Mr. Lee currently resides in Laguna Beach, California and is the founder and CEO of his own patent licensing company, Aequitas Technologies. Ex. 7 (Lee Accurint); Ex. 8 (Lee LinkedIn).

Stephen C. Beuerle was the patent prosecution attorney for the '743 Patent. Ex. 9 ('743 Patent FH excerpts); Ex. 10 (Case No. 3:16-cv-01903, Huawei's initial disclosures) at 6. Mr.

Beuerle currently practices patent law in San Diego, California.  Ex. 11 (Beuerle Biography).

> **D.**    **InfoGation's Prior Lawsuits Against Google's OEMs In The SDCA**

In 2016, InfoGation brought suit in the SDCA against three of Google's OEMs:  ZTE Corporation ("ZTE"), HTC Corporation and HTC America, Inc. (collectively, "HTC"), and Huawei Technologies Co., Ltd. and Huawei Device USA, Inc. (collectively, "Huawei"). InfoGation asserted that the OEM defendants' smartphone products infringed the '743 Patent because they were capable of connecting to a "Google Maps navigation server" and receiving route information in a "non-proprietary, natural language format" as recited in the '743 Patent's claims.  *See* Ex. 12 (Case No. 3:16-cv-01901, Dkt. 1) at ¶ 15–16; Ex. 13 (Case No. 3:16-cv-01902, Dkt. 1) at ¶ 15–16; Ex. 14 (Case No. 3:16-cv-01903, Dkt. 1) at ¶ 15–16.

During the SDCA cases, which were before Judge Marilyn L. Huff, InfoGation continuously relied on its connection to San Diego to defeat defendants' jurisdictional motions. InfoGation opposed HTC's motion to transfer to the Western District of Washington on the basis that the SDCA was more convenient.  Ex. 3 (Case No. 3:16-cv-01902, Dkt. No. 98).  InfoGation also argued that the SDCA had already learned everything about the dispute and, thus, transfer would be wasteful: "This Court has invested a great deal of time and energy learning the facts relevant to these proceedings.  The Western District of Washington and the Northern District of California would undoubtedly require significant time to learn this information.  This disfavors transfer."  *Id*. at 11.

When Google filed a declaratory judgment ("DJ") action against InfoGation and the '743 Patent in the Northern District of California ("NDCA"), InfoGation moved to dismiss, arguing that the SDCA was the more convenient forum.  *See* Ex. 15 (Case No. 3:16-cv-05821, Dkt. No. 15).  InfoGation highlighted its ties to the SDCA, stating, "InfoGation, a small practicing entity based in San Diego, filed three complaints for patent infringement against smartphone

manufacturers — ZTE, HTC, and Huawei — in the Southern District of California, InfoGation's **home** district." Ex. 2 (Case No. 3:16-cv-05821, Dkt. No. 28) at 1 (emphasis added).  InfoGation further emphasized that it "filed the complaints in InfoGation's home district, where InfoGation has always been located, rather than forum shopping." *Id*. at 9.

In parallel with its efforts to dismiss the DJ action in the NDCA, InfoGation also opposed Huawei's motion to stay the SDCA action in favor of the DJ action.  InfoGation argued that the SDCA was its "home forum" district, emphasizing that "InfoGation is and always has been based in San Diego."  Ex. 16 (Case No. 3:16-cv-01903, Dkt. No. 36) at 2, 6.  In reliance on InfoGation's statements, the NDCA court dismissed Google's DJ action, while the SDCA court kept InfoGation's three cases.  Ex. 17 (Case No. 3-16-cv-05821, Dkt. 37); Ex. 18 (Case No. 3-16-cv-01903, Dkt. 38).

On May 5, 2017, Judge Huff adopted defendants' proposed claim constructions for two critical terms, construing (1) "non-proprietary" as "format that can be used with mapping databases provided by other manufacturers" and (2) "natural language" as "a language spoken or written by humans, as opposed to programming language or machine language."  Ex. 19 (Case No. 3:16-cv-01903, Dkt. 74) at 14–15, 20.  After the court issued its constructions, defendants asked InfoGation to drop the case because InfoGation had previously admitted that the defendants' proposed constructions would be dispositive if adopted.  Ex. 20 (Letter to InfoGation).  On October 22, 2017, InfoGation dismissed all cases.  Ex. 21 (Case No. 3-16-cv-01903, Dkt. 114).

## III.    LEGAL STANDARD

Under 28 U.S.C. § 1404(a), the moving party must first show that the claims "might have been brought" in the proposed transferee district.  *In Re Volkswagen of Am., Inc*., 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*") (internal quotation marks omitted).  The moving party

must then show that the transferee district is the more convenient forum.  *Id*. at 315.  In the Fifth Circuit, the "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).  The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The public factors include:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.  *Id*.

## IV.    ARGUMENT: ALL FACTORS FAVOR TRANSFER

Transfer to the SDCA is appropriate because documents and witnesses from *both* parties are located in California.  And InfoGation is only filing this action in this District to avoid the unfavorable claim constructions from the past litigation that were issued by its "home forum" court in the SDCA.  Thus, transfer is appropriate here.

### A.    This Case Could Have Been Brought In The SDCA

A patent infringement case may be brought in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b); *see also TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017).  This case could have been brought in the SDCA given Google's extensive ties to California, including its Mountain View headquarters.  Accordingly, the threshold requirement for transfer is met.

**B.      Private Interest Factors Weigh In Favor Of Transfer**

**1.      The Relevant Sources Of Proof Are Based In California**

In considering the relative ease of access to sources of proof, a court looks to where evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316.

Here, InfoGation has its headquarters in San Diego, California. Dkt. 27 at ¶ 1. As such, all sources of proof from InfoGation are presumably located in the SDCA. Further, third-party witnesses are also located in SDCA. Dooyong Lee likely keeps his documents relating to monetization of the '743 Patent in California where he is located in Laguna Beach, California. Ex. 7 (Dooyong Lee Accurint). And the patent prosecution attorney Stephen Beuerle likely keeps his prosecution files relating to the '743 Patent at his law offices in San Diego in the SDCA. Ex. 11 (Beuerle Biography).

And while in patent infringement cases, "the bulk of the relevant evidence usually comes from the accused infringer," *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotation marks omitted), InfoGation cannot credibly contend that its access to Google's documents will be hindered in the SDCA, since it previously filed suit in the SDCA based on Google Maps.[2] *See* Exs. 12-14; *Moskowitz*, 2020 WL 4577710, at *3-4 ("The Court notes that the headquarters of both parties are located in Pennsylvania and Maryland . . . closer to . . . Pennsylvania as opposed to Texas."). Thus, this factor weighs in favor of transfer.

**2.      The Availability Of Compulsory Process Strongly Favors Transfer**

A court considers the availability of compulsory process to secure the attendance of

---

[2] Google is headquartered in Mountain View, California. Zhang Decl. at ¶ 3. And nearly all the documents that relate to the development or operation of the accused features of the Google Maps API, including highly confidential proprietary source code, are either physically present in or electronically accessible from Mountain View as that is where the persons most qualified to identify and locate such documents reside. *Id.* at ¶ 7.

witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. A court may subpoena a witness to attend trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). A court may also subpoena a witness within the state when the witness is a party, an officer of the party, or a person who would not incur substantial expense when commanded to attend trial. Fed. R. Civ. P. 45(c)(1)(B).

The availability of the compulsory process strongly favors transfer to the SDCA because at least two relevant third party witnesses reside in the SDCA, while none are located in this District. Dooyong Lee, who has knowledge of attempts to monetize the '743 Patent, currently resides in Laguna Beach, California. Ex. 7 (Dooyong Lee Accurint). And Stephen C. Beuerle, a patent attorney with information concerning the alleged inventions disclosed and claimed in the '743 Patent, practices law in San Diego, California. Ex. 11 (Beuerle Biography).

The SDCA is able to compel Mr. Beuerle and Mr. Lee to testify, as both live or work within 100 miles of the district. Ex. 22 (Google Maps: Laguna Beach to San Diego). This District, on the other hand, cannot compel any of these witnesses. And based on InfoGation's prior litigations and its Amended Complaint in this action, Google is not aware of any relevant third party witnesses who are located in the WDTX or Texas.

### 3.      The Cost Of Attendance For Willing Witnesses

The cost of attendance for willing witnesses factor relates to the relative convenience of each forum to witnesses in the litigation, including costs in time and money. "The convenience of the witnesses is probably the single most important factor in the transfer analysis." *In re Genentech, Inc.*, 566 F.3d at 1343 (internal quotation marks omitted). "[I]t is an 'obvious conclusion' that it is more convenient for witnesses to testify at home." *Volkswagen II*, 545 F.3d at 317. Witnesses who have to leave home "not only suffer monetary costs, but also the personal

costs associated with being away from work, family, and community." *Id*.  In *Moskowitz*, this Court found this factor weighed towards transfer because of the large "number of party witnesses for both [plaintiff] Moskowitz and [defendant] Globus Medical who would face significantly more inconvenience by appearing in the WDTX as opposed to" the transferee forum.  2020 WL 4577710, at *5.

Similarly here, the cost of attendance for willing witnesses overwhelmingly favors transfer to the SDCA because all the party witnesses are in or near the SDCA.  For Google's witnesses, the SDCA is only a short flight of one-hour and forty minutes from Northern California, where Mr. Fidler, Mr. Zhang, and other engineers who work on the accused features of Google Maps API are located, or two hours and forty minutes from Seattle where Dr. Hightower is located.  Ex. 23 (Google Maps: San Francisco to San Diego); Ex. 24 (Google Maps: Seattle to San Diego).  InfoGation's witnesses also live in the SDCA, as its principal place of business in San Diego, and Dr. Pu, the company's founder and CEO, is located there.

If this case is kept here in Waco, Google and InfoGation witnesses would need to take, at a minimum, two flights, with each flight to and from Waco, Texas taking about five hours.  Ex. 25 (Google Maps: San Francisco to Waco); Ex. 26 (Google Maps: San Diego to Waco); Ex. 27 (Google Maps: Seattle to Waco).

By contrast, not a single willing witness lives in this District or the state of Texas. Accordingly this factor strongly favors transfer.

> **4.      Other Practical Problems Associated With Trial Of These Cases Favor Transfer**

When examining practical problems, a court considers problems such as judicial economy.  *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).  For instance, a court's familiarity with a particular patent or lawsuit weighs in favor of that court presiding over

the case.  *See Crossroads Sys., Inc. v. Infortrend Corp.*, No. A-12-CA-104-SS, 2012 WL

13029377, at *2 (W.D. Tex. May 15, 2012) (noting that transfer was inappropriate because the

"Court is intimately familiar with the technology in this case, having presided over several prior

infringement actions regarding the patent family at issue"); *see also In re EMC Corp.*, 501 F.

App'x 973, 976 (Fed. Cir. 2013) ("[W]e have held that a district court's experience with a patent

in prior litigation and the co-pendency of cases involving the same patent are permissible

considerations in ruling on a motion to transfer venue").

      Texas courts have accordingly granted transfer to another forum having prior familiarity

with an asserted patent, such as through construing the patent's claim terms as part of a past

litigation.  For example, in *Nidec Motor Corp. v. Broad Ocean Motor LLC*, a Texas court found

the practical problem factor weighed in favor of transfer because "[t]he Eastern District of

Missouri ha[d] construed the Asserted Patents" and was "familiar with those patents," while the

Texas court was not.  No. 2:15-cv-443-JRG-RSP, 2016 WL 776986, at *3 (E.D. Tex. Feb. 29,

2016).  Another Texas court found this factor favored transfer where the transferee court "ha[d]

already conducted a technology tutorial and [M]arkman hearing" and where the transferee judge

had "expended considerable time and energy familiarizing himself with the technology at issue

and the claims of the patents."  *Bandspeed, Inc. v. Acer, Inc.*, No. 2:10-CV-215-TJW, 2011 WL

3648453, at *4 (E.D. Tex. Aug. 15, 2011).

      Here, Judge Huff in the SDCA is fully familiar with the '743 Patent and its alleged

relationship with Google Maps.  Judge Huff held a *Markman* hearing resulting in claim

constructions of key claim terms that appear in the claims asserted in this case, including "non-

proprietary" and "natural language."  Ex. 19 (Case No. 3:16-cv-01903, Dkt. 74) at 14-15, 20.

Judge Huff also issued orders on (1) a Rule 12 motion for a judgment of invalidity under § 101;

(2) a motion regarding the priority date of the '743 Patent and (3) procedural motions to stay. Ex. 28 (Case No. 3-16-cv-01903, Dkt. 59); Ex. 29 (Case No. 3-16-cv-01903, Dkt. 87); Ex. 30 (Case No. 3-16-cv-01903, Dkt. 82).

Dissatisfied with the outcomes from the prior litigation, InfoGation is now engaging in the type of "forum shopping" that it disclaimed when it previously *opposed* litigating anywhere outside of the SDCA.  *See* Ex. 2 (Case No. 3:16-cv-05821, Dkt. No. 28) at 9.  Any attempt by InfoGation to deny that it is "forum shopping" by filing in this District is disingenuous given its prior insistence on litigating exclusively in the SDCA.  In fact, InfoGation opposed HTC's motion to transfer venue on the basis that the SDCA court and Judge Huff had already "learn[ed] the facts," stating: "[t]his Court [SDCA] has invested a great deal of time and energy learning the facts relevant to these proceedings.  The Western District of Washington and the Northern District of California would undoubtedly require significant time to learn this information.  This disfavors transfer."  Ex. 3 (Case No. 3:16-cv-01902, Dkt. No. 98) at 11.  So too is the case here; this Court would have to expend extensive resources to familiarize itself with this matter whereas the SDCA would not.  As such, this factor strongly favors transfer to the SDCA.

### C.    The Public Interest Factors Favor Transfer To The SDCA

#### 1.    The Administrative Difficulties Flowing From Court Congestion

"Administrative difficulties manifest when litigation accumulates in congested centers instead of being handled at its origin."  *Turner v. Cincinnati Ins. Co*., No. 6:19-CV-642-ADA-JCM, 2020 WL 210809, at *5 (W.D. Tex. Jan. 14, 2020).  The relevant inquiry under this factor is "the speed with which a case can come to trial and be resolved[.]"  *In re Genentech, Inc.*, 566 F.3d at 1347.  In this instance, the time to trial favors transfer.  Based on statistics for the years 2010 to 2020, the median time to jury trial in patent cases is 1.94 years with Judge Huff, as opposed to 2.62 years in the WDTX.  Ex. 1 (DocketNav Statistics).

### 2.    The Local Interest In Having Localized Interests Decided At Home

The second public interest factor is local interest in having localized interests decided at home. *See Volkswagen I*, 371 F.3d at 206. "The focus of the inquiry is the relative connection of the localities to the events giving rise to this suit and their corresponding interests in the resolution of this controversy." *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-CV-141-LY, 2017 WL 4547916, at *4 (W.D. Tex. Oct. 11, 2017), *report and recommendation adopted*, No. 1:17-CV-141-LY, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018). Transfer is appropriate where "none of the operative facts occurred in the division and where the division had no particular local interest in the outcome of the case." *Id.*

Here, local interests favor transfer. Indeed, as InfoGation has said numerous times, it is from San Diego and the SDCA is its home district. Accordingly, the SDCA has an interest in the adjudication of this matter. The WDTX, on the other hand, has no connection with the events and parties relevant to this action.

### 3.    The Familiarity Of The Forum With The Law

The third public interest factor is "the familiarity of the forum with the law that will govern the case." *Volkswagen II*, 545 F.3d at 315. Both the SDCA and the WDTX are capable of applying the relative patent laws to this matter. But Judge Huff of the SDCA has already familiarized herself with the applicability of the patent laws to the '743 Patent and the specific issues raised by InfoGation's allegations. As such, this factor favors transfer.

### 4.    The Avoidance Of Conflict Of Laws

The final public interest factor is "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315. The law applied is the same in both the SDCA and the WDTX thereby making this factor neutral.

## V.      CONCLUSION

Because seven of the eight total transfer factors weigh in favor of transfer to the Southern

District of California, this case should be transferred to that district.

Dated: August 17, 2020                                Respectfully submitted,

By: */s/J. Mark Mann*
**J. Mark Mann**
State Bar No. 12926150
mark@themannfirm.com
**G. Blake Thompson**
State Bar No. 24042033
blake@themannfirm.com
**MANN TINDEL THOMPSON**
300 West Main St.
Henderson, Texas 75652
Telephone: (903) 657-6003
Facsimile: (903) 657-6003

Darin W. Snyder (*pro hac vice*)
dsnyder@omm.com
David S. Almeling (*pro hac vice*)
dalmeling@omm.com
Mark Liang (*pro hac vice*)
mliang@omm.com
Bess Ibtisam Hanish (*pro hac vice*)
bhanish@omm.com
Daniel Silverman (*pro hac vice*)
dsilverman@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

**ATTORNEYS FOR DEFENDANT
GOOGLE LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this August 17, 2020 with a copy of this document via electronic mail.

Dated: August 17, 2020                      */s/ J. Mark Mann*
                                                        **J. Mark Mann**

## <u>CERTIFICATE OF CONFERENCE</u>

On August 7, 2020, pursuant to Local Rule CV-7, counsel Mark Liang for Defendant met and conferred with counsel Matthew C. Holohan for Plaintiff, and counsel for Plaintiff indicated on August 11, 2020, that Plaintiff is opposed to the relief sought by this Motion.

Dated: August 17, 2020                      */s/ Mark Liang*
                                                        **Mark Liang**