**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **INFOGATION CORPORATION,** § | | |
| *Plaintiff* § | | |
| § | | **6:20-CV-00366-ADA** |
| **-vs-** § | | |
| § | | |
| **GOOGLE LLC,** § | | |
| *Defendant* § | | |
| § | | |

## ORDER GRANTING GOOGLE'S MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)

Before the Court is Defendant Google LLC's ("Google" or "Defendant") Motion to Transfer Venue to the Southern District of California ("SDCA") (the "Motion to Transfer") pursuant to 28 U.S.C. § 1404(a). ECF No. 30. The Motion was filed on August 12, 2020. *Id.* Plaintiff, InfoGation Corporation ("InfoGation") filed its response on August 28, 2020. ECF No. 34. Google filed its reply on September 8, 2020. ECF No. 38.  After considering all related pleadings and the relevant law, the Court is of the opinion that Google's Motion should be **GRANTED**.

### I. Factual Background

On May 5, 2020, Plaintiff InfoGation filed this suit in this Court (No. 6:20-CV-00366) ("the -366 action") alleging that Google infringes on U.S. Patent No. 6,292,743 ("the '743 Patent") based on the Google Maps Application Programming Interface ("API") Product.  ECF No. 1. The '743 Patent, is titled "Mobile Navigation System." ECF No. 1 ¶ 7. According to InfoGation, the '743 Patent "is directed to a mobile navigation system wherein the client navigation computer wirelessly connects to a navigation server, receives optimal route information from that navigation server that is formatted using a non-proprietary, natural language description, reconstructs the optimal route from that non-proprietary, natural language description using a mapping database

1

coupled to the navigation computer, and displays the optimal route on a display screen using that mapping database." *Id.* at ¶ 11. InfoGation alleges that "Google has made, used, sold, offered for sale, and/or imported one or more products or services incorporating the technology of the Google Maps API, and thereby directly infringed, literally and/or under the doctrine of equivalents, one or more claims of the '743 Patent." *Id.* at ¶ 36.

In its Motion to Transfer, Google asserts that two claim constructions for critical terms regarding the '743 Patent and this litigation were determined in 2016 when InfoGation brought suit in the SDCA against three of Google's OEMs: ZTE Corporation ("ZTE"), HTC Corporation and HTC America, Inc. (collectively, "HTC"), and Huawei Technologies Co., Ltd. and Huawei Device USA, Inc. (collectively, "Huawei"). Google also indicates that, "During the SDCA cases, [the California Actions] which were before Judge Marilyn L. Huff, InfoGation continuously relied on its connection to San Diego to defeat defendants' jurisdictional motions." ECF No. 30 at 4. In response, InfoGation contends that "the infringement allegations in the *ZTE/HTC* case are not relevant here, as the defendants in that case were device makers rather than service providers like Google is here." ECF. No 34 at 3.


## II. Standard of Review

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. The moving party must then show that the transferee district is the more convenient forum. *In Re Volkswagen of Am., Inc*., 545 F.3d 315 (5th Cir. 2008) ("*Volkswagen II*"). In the Fifth Circuit, "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said

to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*.

### III. Discussion

There is no dispute as to whether this case could have been properly brought in the SDCA.[1] It clearly could have been. Google has, however, shown that the SDCA is "clearly more convenient" than the WDTX, by weighing *Volkswagen* public and private factors.

### A.  The Private *Volkswagen* factors favor transferring the case to the SDCA.

In considering private factors, the Court necessarily engages in a comparison between the hardships the defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer from transferring the action to the transferee venue. *Cf. Iragorri v. United Technologies Corp.*, 274 F.3d 65, 74 (2d Cir. 2001) (stating courts engage in such a comparison for *forum non conveniens* analyses). The Court will assess each of these factors in turn.

---

[1] Because neither party argues that Google cannot satisfy this threshold issue, the Court will simply state the threshold issue has been satisfied.

### i. The "relative ease of access to sources of proof" is neutral.

In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. "To properly consider this factor, parties must "describe with specificity the evidence they would not be able to obtain if trial were held in the [alternate forum]." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981).   Additionally, the Court recognizes that this factor typically turns on where physical documentary evidence is located. *See, e.g., Volkswagen II*, 545 F.3d at 316. *See, e.g., In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.")

Given that Google is the accused infringer, it will likely have the bulk of the relevant documents in this case. Google is headquartered in Mountain View, CA within the Northern District of California. But it has sizeable offices in both Los Angeles [2] within the SDCA, and Austin[3], which is within the WDTX.  Thus, the relative ease of access to documentary evidence would seem roughly equal in the two districts.[4]  In other words, Google's significant presence in

---

[2] *See* Roger Vincent, *Google, Amazon, Netflix and their tech pals storm L.A.'s office market*, Los Angeles Times, Jul. 18, 2019, https://www.latimes.com/business/la-fi-office-leasing-tech-20190717-story.html. (Last accessed Apr. 23, 2021)

[3] *See* Shonda Novak, *Google says it plans 'significant' expansion in Austin*, https://www.statesman.com/news/20190614/google-says-it-plans-significant-expansion-in-austin. (Last accessed Apr. 23 2021)

[4] Further, InfoGation has failed to specify any evidence that they would not be able to obtain in San Diego that they will have access to here in Waco.

both the SDCA and the WDTX (and the high likelihood of relevant documents existing in both

districts) makes this factor neutral.[5]

### ii.   The "compulsory process" factor is neutral.

"In this factor, the Court considers the availability of compulsory process to secure the

attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured

by a court order." *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316); *Uniloc,*

2020 WL 3415880, at *10. This factor also "weigh[s] heavily in favor of transfer when more third-

party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple,*

*Inc.*, 581 F.App'x. 886, 889 (Fed. Cir. 2014). A court may subpoena a witness to attend trial only

(a) "within 100 miles of where the person resides, is employed, or regularly transacts business in

person,"; or (b) "within the state where the person resides, is employed, or regularly transacts

business in person, if the person . . . is commanded to attend a trial and would not incur substantial

expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-

0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). As party witnesses almost invariably

---

[5] Although the Court wishes to make clear that it has followed Fifth Circuit precedent regarding this factor, the Court believes that the factor itself is at odds with the realities of modern patent litigation. In patent disputes like the one now before the Court, relevant documents are typically located on a server, which may or may not be in the transferee district (or given the use of cloud-based storage, may be located on multiple servers in multiple districts, or even multiple countries) and are equally accessible from both the transferee and transferor districts. Therefore, in this Court's view, there is no difference in the relative ease of access to sources of proof from the transferor district as compared to the transferee district when the vast bulk of documents are electronic. District courts — particularly those with patent-heavy dockets that have very significant document productions — have recently begun to acknowledge this reality. *Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-00642-JRG, ECF No. 216 at 8-9 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modem server forms."). The Court emphasizes that this factor was meant to be one of convenience, developed in a now antiquated world where hauling hundreds of boxes of physical documents across the country was most impractical. Indeed, it seems odd that, despite the likely relative ease of access to all kinds of relevant documents in today's digital world, a party (and a technologically savvy one at that) can automatically tilt a private factor in this analysis in its favor and away from a plaintiff's selected forum simply by raising its hand and acknowledging its status as the alleged infringer. However, under current Fifth Circuit precedent, the physical location of electronic documents affects this factor's outcome. *See, e.g., Volkswagen II*, 545 F.3d at 316. Even though it would not have changed the outcome of this motion, this Court expresses its hope that the Fifth Circuit will consider addressing and amending its precedent to explicitly give district courts the discretion to fully consider the ease of accessing electronic documents.

attend trial willingly, "[w]hen no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor." *Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-00513, 2020 WL 6439178, at *4 (W.D. Tex. Mar. 17, 2020).

Here, neither Google nor InfoGation has identified any unwilling witnesses. Absent any showing of unwillingness, the Court will not attach much weight to this factor. Consequently, the Court finds this factor neutral.

### iii.   The "cost of attendance" factor weighs in favor of transfer.

Courts properly give more weight to the convenience of non-party witnesses. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs.*, No. A-09-CA-773 LY, 2010 U.S. Dist. LEXIS 27903, at *11 (W.D. Tex. Mar. 23, 2010); *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870–71 (E.D. Tex. 2012). Although more weight is given to the convenience of non-party witnesses, "the convenience of the party witnesses is still a part of the analysis.' *Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'ns Co.*, 402 F. Supp. 2d 731 (E.D. Tex. 2005) To assist in analyzing this factor, the Fifth Circuit adopted a "100-mile rule." *Volkswagen I*, 371 F.3d at 204–205; *see also Volkswagen II*, 545 F.3d at 317. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

This Court notes however, that "the '100-mile' rule should not be rigidly applied" where "witnesses . . . will be required to travel a significant distance no matter where they testify." 566 F.3d at 1344. *Genentech* specifically held that witnesses traveling from Europe, Iowa, and the East Coast would be only "slightly more inconvenienced by having to travel to California" than to

Texas. *Id.* at 1348. Additionally, witnesses will be required to travel significant distance, will likely incur meal and lodging expenses, and will likely incur time away from home. *See id.* at 1344. "[I]t is an 'obvious conclusion' that it is more convenient for witnesses to testify at home." *Volkswagen II*, 545 F.3d at 317. Importantly, the venue need not be convenient for *all* witnesses. *Genentech, Inc.*, 566 F.3d at 1345. If a substantial number of witnesses reside in one venue and no witnesses reside in another, the factor will weigh in favor of the venue where witnesses reside. *See id.*

Google asserts, "InfoGation does not dispute that Google's witnesses are closer to the [SDCA]. And it concedes that InfoGation itself and its witnesses, including CEO Kent Pu, are in the SDCA." ECF No. 38 at 2. According to Google, "the SDCA is only a short flight of one-hour and forty minutes from Northern California, where [Google's witnesses] Mr. Fidler, Mr. Zhang, and other engineers who work on the accused features of Google Maps API are located, or two hours and forty minutes from Seattle where Dr. Hightower is located. ECF No. 30 at 9. While the parties disagree on the location of witnesses, InfoGation has indeed recognized that some of its witnesses reside within the SDCA stating that "Mr. Pu is willing to travel to Waco, Mr. Beuerle and Dr. Li likely will not be asked to appear at trial, and Mr. Lee will need to travel from South Korea to the U.S. regardless of where trial occurs." ECF No. 34 at 6. The Court is of the opinion that InfoGation's witness Mr. Lee, located in South Korea, will be only slightly more inconvenienced traveling to Waco than he will San Diego as he will need to travel by air, secure lodging, and be away from his home in order to be present at trial in either location, and thus, does not carry much weight regarding transfer. The remaining InfoGation witnesses located within the SDCA however, do support transfer.

Google's witnesses located in Seattle, Washington will likely also need to travel by air, secure lodging, and be away from their homes in order to attend trial in either district. However,

traveling from Seattle to San Diego will clearly be more convenient and less expensive than traveling from Seattle to Waco. InfoGation acknowledges that "InfoGation's CEO, Qing Kent Pu, resides in the San Diego area" but notes that "Mr. Pu chose to file the case here and will travel to this District for trial." ECF No. 34 at 6. The Court finds that the willingness of Mr. Pu to travel to Waco carries little weight, since he still resides within the SDCA, the district to which transfer is sought.

InfoGation also argues that, "Mr. Mouser, on the other hand, would likely prefer to travel to Waco instead of California." ECF No. 34 at 6. Yet, while Mr. Mouser does seem to reside Texas, he appears to be the only one. Neither of the parties have identified any other witnesses located within this state, much less this district. Despite disagreement between parties on where key witnesses reside, the Court finds that the SDCA would be closer than the WDTX for the majority of witnesses. The Court takes InfoGation's point that "the case is in its infancy and . . . it is not yet clear which specific aspects of Google Maps API will be relevant to this case, let alone which individuals will be the most knowledgeable about them." *Id.* at 4. The Court, however, also recognizes that "given typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in 1404(a) briefing will testify at trial." *Fintiv, Inc.*, 2019 WL 4743678, at *6. Indeed, the Court assumes only a few party witnesses and even fewer non-party witnesses (if any) will testify at trial. *Id.* Consequently, long lists of potential party and non-party witnesses do not affect the Court's analysis for this factor. *Id.*

The majority of both party and non-party witnesses will be located either within the SDCA or in the state of California and the cost of attendance for these witnesses will be less if the case is tried in the SDCA than if it were tried in WDTX. Accordingly, this factor weighs in favor of transfer.

8

### iv.   The "all other practical problems" factor favors transfer to the SDCA.

In considering a transfer motion, the court considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. As Google points out regarding the California Actions, InfoGation itself "argued that the SDCA had already learned everything about the dispute and, thus, transfer would be wasteful" and that "[t]his Court [Judge Huff in the SDCA] has invested a great deal of time and energy learning the facts relevant to these proceedings." ECF No. 30 at 15. Google asserts that "SDCA Local Civil Rule 40.1(f) requires parties to file a notice of related cases, including an explanation of "why assignment to a single district judge is or is not likely to effect a saving of judicial effort." ECF No. 38 at 6. Google also indicates that, if transferred, it "would file a notice identifying InfoGation's prior cases before Judge Huff and explaining why it would be efficient to litigate before her again, which would likely lead to assignment to her." *Id.*   Judge Huff reviewed tutorials on the technology at issue, conducted a claim construction proceeding, and issued a claim construction order, all leading to InfoGation's voluntary dismissal of the case. *See generally* ECF No. 30.

On the one hand, the Court is skeptical that the parties will agree to skip any further claim construction proceedings and simply adopt all constructions already made. ECF No 1. But while this case differs from the California Actions in that "the defendants in that case were device makers rather than service providers like Google is here," the Court also recognizes the significant factual overlap between this case and the California Actions regarding the '743 Patent. ECF No.34 at 3. This overlap means that much of the work already performed by Judge Huff would likely need to be duplicated by this Court, which would unnecessarily consume judicial resources. ECF No. 34 at 3.

The Court understands that Judge Huff would likely need to re-familiarize herself with the details of this case but does not agree with InfoGation that "transferring the case now would require just as much relearning by the court in San Diego as would be necessary here." ECF No. 34 at 7. The Court is of the opinion that Judge Huff's history with these parties and this patent would likely allow for an easier, more expeditious, and less expensive resolution of the dispute. Pursuant to SDCA Local Civil Rule 40.1(f), Judge Huff is likely to be assigned to the case, if transferred. Consequently, the Court finds this factor weighs slightly in favor of transfer.

### B. The Public *Volkswagen* factors are neutral.

The relevant public-interest factors are neutral. As previously noted, these factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law governing the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law. *Volkswagen II*, 545 F.3d at 315. The Court will also consider each of these factors in turn.

### i. The "administrative difficulties flowing from court congestion" factor favors transfer to the SDCA.

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved[.] *In re Genentech, Inc.*, 556 F.3d 1338, 1437 (Fed. Cir. 2009). Administrative difficulties manifest when litigation accumulates in congested centers instead of being handled at its origin. *Gulf Oil*, 330 U.S. at 508. This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Koehring Co. v. Hyde Constr. Co.*, 324 F.2d 295, 296 (5th Cir. 1963). InfoGation points out that this Court has a faster time to trial than courts in the SDCA. This Court does not disagree. But as discussed above, in cases that involve claim construction decisions

previously litigated in other jurisdictions, judicial economy often favors transfer to a court that is already familiar with issues involved in the case. *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir.1997).

The potential for the SDCA to have some familiarity with the technology and the patents in suit in addition to the claim construction issues already ruled on counterbalance the expediency of this court's docket. Therefore, judicial economy considerations favor transferring this case to the SDCA.

### ii.  The "localized interest" factor slightly favor transfer.

There is "a local interest in having localized controversies decided at home." *Gulf Oil*, 330 U.S. at 511; *Piper Aircraft*, 454 U.S. at 260. This Court has already established that "Google is 'local' in WDTX." *Parus Holdings Inc. v. LG Elecs. Inc.*, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020). This Court thus disagrees with InfoGation that, "the issues in this case are local neither to San Diego nor to Waco" and that "neither court has significant interest in the outcome of this litigation compared to the other." ECF No. 34 at 12. This Court also disagrees with Google's assertion that the WDTX "has no connection with the events and parties relevant to this action" since infringing products serviced by Google are sold to both residents of the WDTX and the SDCA and that potential acts of infringement affect the residents of both states. ECF No. 30 at 16.

That said, the Court cannot help but notice that InfoGation is a San Diego company and that it initially brought suit against Google in the Southern District of California seemingly for that very reason. Indeed, the Court notes that InfoGation, has consistently sought to avoid transfer out of the SDCA and emphasized that it "filed [the California Actions] in InfoGation's home district, where InfoGation has always been located, rather than forum shopping." ECF No. 30 at 9.

The Court understands that InfoGation feels its company is in a different place for a "myriad of reasons" including its assertion, "at the time [of the California actions] more evidence was present in San Diego than it is today." ECF No 34 at 7. However, as discussed above, "in patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," and InfoGation's assertion that there may not be as much evidence in San Diego as before is not relevant under this factor.

InfoGation has provided no evidence suggesting that the WDTX would have greater interest in the resolution of this dispute than the SDCA, which InfoGation itself recognizes as its "home district." Accordingly, the Court finds that this factor weighs in favor of transfer.

### iii. Familiarity of the forum with the law that will govern the case" and "avoidance of unnecessary problems of conflict of laws or in the application of foreign law" factors are neutral.

This Court's expertise in patent law is at least comparable to that of the SDCA and the parties agree that "this Court and the SDCA are equally capable of applying federal patent law." ECF No. 34 at 12. The Court agrees with Google that, "the Southern District of California has more familiarity with the issues in this case" due to the California Actions; however, the Court feels that familiarity with the patent itself is not relevant in the context of this factor as it is discussed above. ECF No. 34 at 12. The law applied is the same in both the SDCA and the WDTX; therefore, this factor is neutral.

### IV. Conclusion

Having considered the private and public interest factors, the Court's conclusions for each factor is summarized as follows:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Neutral |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| Cost of attendance for willing witnesses | Weighs in favor of transfer |
| all other practical problems that make trial of a case easy, expeditious and inexpensive | Weighs in favor of transfer |
| Administrative difficulties flowing from court congestion | Weighs in favor of transfer |
| Local interest | Weighs in favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Finding that four factors weigh in favor of transfer and none weigh against, the Court finds that Defendant Google's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) should be and hereby is **GRANTED**. The Court thus orders the case be **TRANSFERRED** to the Southern District of California.

**SIGNED** this 29th day of April 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE